2004 WY 12

**BOARD OF PROFESSIONAL RESPONSIBILITY, Wyoming State Bar, Petitioner,**

v.

**Kevin P. MEENAN, Attorney No. 5–1835, Respondent.**

**No. D–04–1.**

Supreme Court of Wyoming.

Feb. 24, 2004.

## ORDER OF DISBARMENT

[¶ 1] **This matter** came before the Court upon a Report and Recommendation filed herein February 13, 2004, by the Board of Professional Responsibility for the Wyoming State Bar. The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation, the parties' Stipulation of Facts, the Judgment and Sentence entered against Respondent on February 24, 2004, and the file, finds that the Report and Recommendation should be approved, confirmed, and adopted by the Court, with the following exception. This Court finds that, contrary to the Board of Professional Responsibility's recommendation, Respondent Kevin P. Meenan should not be allowed to seek reinstatement after only three years. Instead, consistent with Section 24(c) of the Disciplinary Code for the Wyoming State Bar, this Court concludes that Respondent may not petition for reinstatement for at least five years from the effective date of this Order of Disbarment. It is, therefore,

[¶ 2] **ADJUDGED AND ORDERED** that, with the exception noted above, the Report and Recommendation filed herein by the Board of Professional Responsibility for the Wyoming State Bar shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶ 3] **ADJUDGED AND ORDERED** that, effective this date, the Respondent, Kevin P. Meenan, shall be, and hereby is, disbarred from the practice of law in this state; and it is further

[¶ 4] **ADJUDGED AND ORDERED** that, pursuant to Section 24(c) of the Disciplinary Code for the Wyoming State Bar, Respondent may not petition for reinstatement for at least five (5) years from the effective date of this Order of Disbarment; and it is further

[¶ 5] **ADJUDGED AND ORDERED** that the Respondent, Kevin P. Meenan, is assessed and shall reimburse the Wyoming State Bar for the costs of this matter in the amount of $173.62, on or before April 1, 2004; and it is further

[¶ 6] **ORDERED** that Respondent shall comply with the requirements of the Disciplinary Code for the Wyoming State Bar, particularly the requirements found in Section 22 of the Disciplinary Code; and it is further

[¶ 7] **ORDERED** that, pursuant to Section 4(c) of the Disciplinary Code for the Wyoming State Bar, this Order of Disbarment shall be published in the Pacific Reporter, along with the following documents (which are attached to this order and incor-

porated herein): the Board of Professional Responsibility's Report and Recommendation, the parties' Stipulation of Facts (not including the plea agreement or Respondent's resume), and the Judgment and Sentence entered against Respondent on February 24, 2004; and it is further

[¶ 8] **ORDERED** that the Clerk of this Court cause a copy of the Order of Disbarment to be served upon the Respondent, Kevin P. Meenan; and it is further

[¶ 9] **ORDERED** that the Clerk of this Court transmit a copy of this Order of Disbarment to members of the Board of Professional Responsibility, and the clerks of the appropriate courts of the State of Wyoming.

[¶ 10] **DATED** this 24th day of February, 2004.

ATTACHMENT

BEFORE THE BOARD OF PROFESSIONAL RESPONSIBILITY
WYOMING STATE BAR
STATE OF WYOMING

In the matter of
KEVIN P. MEENAN,
WSB Attorney No. 5–1834,
Respondent.

DOCKET No. 2003–25

**REPORT AND RECOMMENDATION**

The Board of Professional Responsibility makes the following report and recommendation, with its findings of fact, conclusions of law, and recommendation to the Supreme Court of Wyoming:

*FINDINGS OF FACT*

1. The Wyoming State Bar and Respondent Kevin P. Meenan, by and through their respective counsel, provided the Board of Professional Responsibility with a Stipulation of Facts. The Board adopts the facts included in that documents [sic] as if each is repeated fully herein. A true and correct copy of that Stipulation is attached hereto as Exhibit 1, along with its Exhibits A and B.

2. Respondent admitted (Stipulation, ¶ 22) and the Board hereby concludes that Respondent violated Rules 8.4(b) and 8.4(c).

*CONCLUSIONS OF LAW*

3. ABA Standards for Imposing Lawyer Sanctions 5.11 corresponds to violations of Rules 8.4(b) and 8.4(c) and provides that "[d]isbarment is generally appropriate when (a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft . . . ," or (b) "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

4. ABA Standards for Imposing Lawyer Sanctions 9.1 provides for consideration of aggravating and mitigating circumstances in deciding on an appropriate sanction. Section 9.21 defines aggravating circumstances as "any consideration, or factors that may justify an increase in the degree of discipline to be imposed." Section 9.31 defines mitigating circumstances as "any considerations, or factors that may justify a reduction in the degree of discipline to be imposed."

   a. Applicable aggravating factors in this case are:

      i. Section 9.22(b)—dishonest or selfish motive;

      ii. Section 9.22(c)—a pattern of misconduct;

      iii. Section 9.22(d)—multiple offenses; and

      iv. Section 9.22(i)—substantial experience in the practice of law.

   b. Applicable mitigating factors in this case are:

      i. Section 9.23(a)—absence of a prior disciplinary record;

      ii. Section 9.23(c)—personal or emotional problems;

      iii. Section 9.23(d)—timely good faith effort to make restitution or to rectify consequences of misconduct;

iv. Section 9.23(e)—full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

v. Section 9.23(g)—character or reputation;

vi. Section 9.23(1)—imposition of other penalties or sanctions; and

vii. Section 9.23(m)—remorse.

## RECOMMENDATION TO THE SUPREME COURT OF WYOMING

5. It is hereby recommended to the Wyoming Supreme Court that the appropriate sanction for Meenan's violations of Rules 8.4(b) and 8.4(c) of the Wyoming Rules of Professional Conduct, considering the stipulated facts and the aggravating and mitigating circumstances, is that Meenan should be disbarred.

6. Pursuant to Section 24(c) of the Disciplinary Code for the Wyoming State Bar (2003), the Board further recommends that Meenan be allowed to seek reinstatement after three years from the date of the Order of Disbarment.[1]

7. The Board further recommends that Meenan be ordered to pay all costs incurred in the prosecution of this matter which at this time are $173.62.

This decision is made unanimously of the Board of Professional Responsibility. It is therefore so recommended February 12, 2004.

/s/ Craig Newman
Craig Newman, Chair
BOARD OF PROFESSIONAL RESPONSIBILITY

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the above and foregoing **Report and Recommendation** by placing a copy of the same in the U.S. Mail with postage prepaid this 13th day of February, 2004, addressed as follows:

Terry W. Mackey
Attorney for Kevin Meenan
Hickey & Mackey
P.O. Box 467
Cheyenne, WY 82003-0467

Rececca A. Lewis
Bar Counsel
Wyoming State Bar
P.O. Box 109
Cheyenne, WY 82001

### EXHIBIT 1

### STIPULATION OF FACTS

Come now Rebecca A. Lewis, Bar Counsel, and Kevin P. Meenan, Respondent and stipulate to the following facts for use by the Board of Professional Responsibility and the Wyoming Supreme Court in determining the appropriate sanctions to be imposed in the above captioned matter.

1. In 1976, Kevin Meenan was married to Lynn Soderdahl.

2. He subsequently attended law school at the University of Wyoming, graduating in 1980.

3. Following graduation, Kevin and Lynn Meenan moved to Casper where Kevin Meenan began practicing law. Kevin Meenan and Lynn had two children during the course of their marriage. During their time in Casper, they met Craig and Deann Kahler and became good friends. Craig and Deann Kahler also had two children, Micah and Ryan Kahler. In August of 1983, Craig and Deann Kahler were divorced. Kevin Meenan and Lynn were divorced in February of 1984. Lynn Meenan married Craig Kahler in December of 1985. Several years later, in 1988, Kevin Meenan and Deann Kahler were married.

---

1. Although the disciplinary file in this matter was opened by the Wyoming State Bar prior to the 1 November 2003 effective date of the new Disciplinary Code, the Board of Professional Responsibility, with the approval of the parties and their counsel, all agree that the provisions in the new Code regarding reinstatement can and should apply to this matter. The old Code, Rule XXII(a), provided that reinstatement after disbarment could not be sought until the expiration of five years from the effective date of the order of disbarment. The new Code has the same five year provision at Section 24(c); however, Section 24(c) goes on to provide that another period for seeking reinstatement may be specified in the Order.

4. Kevin and Deann Meenan were given primary custody of Micah and Ryan Kahler and joint custody Kevin Meenan's biological children. Both sets of children spent significant amounts of time with each other as well as with each set of parents. Craig and Lynn Kahler paid no child support for his children Micah and Ryan and the primary financial burden for the wellbeing of all of the children of the Kahlers and the Meenans rested with Deann and Kevin Meenan. In addition, Meenan paid child support to Lynn Kahler for the Meenan Children.

5. Due to the closeness of the four Children's ages, from 1999 to 2002, Kevin Meenan and Deann Meenan were supporting Erin Meenan and Ryan Kahler while they were seniors in high school, or living at home. Erin left for college in the fall of 2000 and her support was shared by the Meenans and Lynn Kahler. Sean Meenan was a student at the University of Wyoming. College expenses for Sean were shared by Kevin Meenan and Lynn Kahler. Micah Kahler was attending college at the University of Northern Colorado and her expenses were paid by Kevin and Deann Meenan. Erin and Sean Meenan and Micah Kahler assisted with their education through scholarships and work.

6. Micah Kahler Evans would testify that Kevin and Deann Meenan expressed concern to her about Craig Kahler having access to funds that belonged to Micah because he would try to obtain the use of them by influencing her. She would also testify that upon receipt of the proceeds of the State Farm Settlement from Kevin and Deann Meenan, Craig Kahler came to her on two occasions to seek "loans" from her which have not been repaid. Kevin attempted to make sure that monies expended for the children were actually used for the children.

7. Deann Meenan, Erin Meenan, Sean Meenan, Ryan Kahler, and Micah Kahler Evans would testify that Kevin Meenan was in charge of the family finances with the consent of the family. They will also testify that Kevin Meenan was given authority to file applications for college and for credit applications in the names of the children signed by him as if they had personally signed them. Ryan Kahler will testify that while he had no knowledge that Kevin Meenan was applying for a Chase Manhattan Bank credit card in his name, Kevin Meenan had made applications on his behalf for other matters such as college admission. Micah Kahler Evans would testify that Kevin Meenan was given authority to handle the financial aspects of her settlement for personal injuries with State Farm Insurance Company on her behalf.

8. Over the course of several years, Kevin Meenan, due to support for the four children and the expenses incurred in his personal and professional life, incurred substantial debts.

9. Also during this time period, Kevin Meenan's father became very ill with cancer and passed away.

10. In order to satisfy the debts and to continue raising the four children in a proper manner consistent with their needs, Kevin Meenan made some decisions regarding family money issues, which are at the heart of the present case.

11. The facts and circumstances of these decisions are as follows:

a. In July of 2001, Kevin Meenan filled out a credit card application for his stepson, Ryan Kahler, in order to begin establishing credit for Ryan Kahler. Kevin Meenan was named as a person authorized to use the card to obtain credit as well.

b. Kevin Meenan used Ryan Kahler's personal identifying information, including his name and Social Security Number, in order to complete the application.

c. Ryan Kahler was unaware, at that time, that Kevin Meenan had made said application and signed it in Ryan Kahler's name.

d. On August 6, 2001, and September 18, 2001, Kevin Meenan used credit checks drawn upon the Chase Manhattan Bank credit card account obtained for Ryan Kahler in the amount of $1,300. In doing so, he signed Ryan Kahler's name to the credit checks.

e. In 1999, Kevin Meenan was given unfettered authority by his stepdaughter, Micah Kahler, age 19, to negotiate a settle-

ment with State Farm Insurance following her injury in a vehicle collision.

f. During the course of these negotiations with State Farm, Kevin Meenan made representations that he was acting as Micah Kahler's attorney.

g. Kevin Meenan was successful in negotiating said settlement for the amount of $55,000.00, which he placed in his trust account and distributed to other various accounts controlled by Kevin and Deann Meenan. These funds were used for purposes other than distribution to Micah Kahler.

h. Upon finalizing the settlement amount, State Farm sent a Release to Kevin Meenan, which required Micah Kahler's signature.

i. In order to prevent Craig Kahler from acquiring funds from this settlement, Kevin Meenan did not inform Micah Kahler of the actual amount of the settlement. Kevin Meenan did inform Micah Kahler that the matter had been settled in an amount well over $20,000, although the matter had been settled for the sum of $55,000. Kevin Meenan signed Micah Kahler's name to the Release and placed the settlement funds is his trust account without Micah Kahler's knowledge. Kevin did not tell her where the money went but he did inform her of the fact of the settlement. Micah Kahler was aware of the fact that Kevin Meenan had done all of the things necessary to complete the settlement, including signing the settlement documents.

12. On February 12, 2003, when Craig Kahler discovered these decisions he placed a call to agents of the Wyoming Division of Criminal Investigation. In addition, he also insisted that Micah and Ryan Kahler report the issues to the Wyoming Division of Criminal Investigation. In spite of full repayment of the funds, the insistence by Micah and Ryan Kahler that all issues were family money management issues and their request that the investigation be terminated, charges were filed against Kevin Meenan.

13. The credit checks from Chase Manhattan bank were obtained in August and September of 2001. Kevin Meenan made payments to Chase Manhattan Bank on this debt during the period of September 2001 through September 2002. Ryan Kahler learned that the payments to Chase Manhattan Bank were in arrears in mid-December, 2002. Ryan and Craig Kahler discussed the matter with the Wyoming Division of Criminal Investigation on February 12, 2003. The final amount due and owing to Chase Manhattan Bank was paid on February 27, 2003. Micah Kahler Evans understood that the proceeds of her settlement with State Farm Insurance Company would be distributed to her upon her graduation from college. $7,000 was paid on behalf of Micah for her trip to attend college in Spain in early 2000. A credit card was obtained in Micah Kahler's name and the charges against that credit card were made by Micah Kahler and paid by Kevin Meenan from his personal account. This credit card was used while Micah was attending college in Spain. The balance of the funds was paid to Micah Kahler Evans in April 2003.

14. A. The elements of the crime of forgery are:

(1) On or about the 18th day of September, 2001

(2) In Natrona County, Wyoming

(3) Kevin Meenan

(4) With intent to defraud

(5) Executed a writing so that it purported to be the act of another who did not authorize that act.

B. The elements of the crime of Unauthorized Use of Personal Identifying information are:

(1) On or about the 18th day of July, 2001

(2) In Natrona County, Wyoming

(3) Kevin Meenan

(4) Willfully obtained personal identifying information of another person and used that information for an unlawful purpose, to obtain credit in the name of the other person without the consent of that person.

C. The elements of the crime of Official Misconduct With Intent to Obtain Pecuniary Benefit are:

(1) On or about the 19th Day of March, 1999

(2) In Natrona County, Wyoming

(3) Kevin Meenan

(4) While a public servant or public officer

(5) Acting with intent to obtain pecuniary benefit

(6) Violated any statute relating to his official duties.

Kevin Meenan pleaded guilty to one count of each of these charges on December 15, 2003.

15. The alleged victims of this activity were Kevin Meenan's children, not clients, business associates or [otherwise] involved with Kevin Meenan in a professional sense.

16. Kevin Meenan made full restitution of all funds involved with the Ryan Kahler credit card issue and the Micah Kahler settlement issue prior to entering pleas in the criminal case.

17. On December 11, 2003, Meenan entered into a Plea Agreement in the Seventh Judicial District Court, Natrona County, Wyoming, and pled guilty to one charge of forgery, one charge of unauthorized use of personal identifying information, and one charge of official misconduct. A certified copy of the Plea Agreement is attached as Exhibit A.

18. Micah Kahler advised agents of the State of Wyoming that she felt that this was a matter that involved her family and her relationship with her parents and her stepparents and that she did not wish that it be pursued as a criminal matter. In addition, she advised the prosecuting attorney that as the "victim" of the charges, she did not desire that Mr. Meenan be convicted of a Felony or that he lose his license to practice law. She also intends to advise the Court of this position at the sentencing hearing relating to the charges against Mr. Meenan.

19. Ryan Kahler advised agents of the State of Wyoming that this was a family matter involving himself, his parents and his stepparents and that he did not desire to have the matter pursued by criminal charges. He advised the prosecuting attorney that as a "victim" of the crime, he did not desire that Mr. Meenan be convicted of a felony or that he lose his license to practice law.

20. Kevin P. Meenan is currently an active member of the Wyoming State Bar and resides in Casper, Wyoming.

21. In addition to his duties as an attorney and as the elected Seventh Judicial District Attorney, Meenan has served his community and profession in numerous capacities. See Exhibit "B" attached hereto. He has taught numerous state prosecutor and law enforcement courses in Wyoming and has lectured and taught courses for the National College of District Attorneys, the National Advocacy Center in South Carolina and at Casper College and the University of Wyoming.

22. With respect to the foregoing, Meenan violated Rules 8.4(b) and (c) of the Wyoming Rules of Professional Conduct.

23. ABA Standards for Imposing Lawyer Sanctions 5.12 corresponds to a violation of Rule 8.4(b) and provides that "[s]uspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."

24. ABA Standards for Imposing Lawyer Sanctions 5.11 corresponds to a violation of Rule 8.4(b) and provides that "[d]isbarment is generally appropriate when (a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft ...," or (b) "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

25. ABA Standards for Imposing Lawyer Sanctions 9.1 provides for consideration of aggravating and mitigating circumstances in deciding on an appropriate sanction. Section 9.21 defines aggravating and mitigating circumstances as "any consideration, or factors that may justify an increase in the degree of discipline to be imposed." Section 9.31 defines mitigating circumstances as "any considerations, or factors that may justify a

reduction in the degree of discipline to be imposed."

a. Applicable aggravating factors believed to be appropriate by Bar Counsel are:

  i. Section 9.22(b); dishonest or selfish motive,

  ii Section 9.22(c); a pattern of misconduct,

  iii. Section 9.22(d); multiple offenses, and

  iv. Section 9.22(i); substantial experience in the practice of law.

b. Applicable mitigating factors believed to be applicable by Kevin Meenan are:

  i. Section 9.23(a); absence of a prior disciplinary record,

  ii. Section 9.23(c); personal or emotional problems,

  iii. Section 9.23(d); timely good faith effort to make restitution or to rectify consequences of misconduct,

  iv. Section 9.23(e); full and free disclosure to disciplinary board or cooperative attitude toward proceedings,

  v. Section 9.23(g); character or reputation,

  vi. Section 9.23(1); imposition of other penalties or sanctions, and

  vii. Section 9.23(m); remorse.

26. It is the position of Bar Counsel that the appropriate sanction, given the aggravating and mitigating circumstances involved in this matter is disbarment in accordance with the Rules of the Wyoming State Bar and restitution of the costs of prosecuting this matter to the Wyoming State Bar in the amount of $500.00. Bar Counsel does not feel that suspension is a sufficient sanction, given the gravity of the offense.

27. It is the position of Kevin Meenan that the appropriate sanction given the aggravating and mitigating circumstances involved in this matter is a suspension for a period of 3 years and restitution of the costs of prosecuting this matter to the Wyoming State Bar in the amount of $500.00. Kevin Meenan does not feel that the circumstances involved in this matter warrant complete disbarment.

Dated this 10th day of February, 2004.

/s/ Rebecca Lewis
Rebecca Lewis
Bar Counsel

/s/ Kevin P. Meenan
Kevin P. Meenan
Respondent

APPROVED AS TO FORM:

/s/ Terry W. Mackey
Terry W. Mackey
Attorney for Respondent

### EXHIBIT A

IN THE DISTRICT COURT OF THE SEVENTH JUDICIAL DISTRICT OF THE STATE OF WYOMING IN AND FOR NATRONA COUNTY
Criminal Action No. 15959–V

STATE OF WYOMING,
Plaintiff,

v.

KEVIN P. MEENAN,
Defendant.

Filed Feb 24 2004

/S/ Anne Volin, Deputy

Gen Tuma, Clerk of

District Court

### JUDGMENT AND SENTENCE

THIS MATTER came before the Court on the 20th day of February, 2004 for sentencing. The Defendant appeared in person and with his attorney, Terry W. Mackey. The State of Wyoming was represented by Special Assistant Attorney General, Frank R. Chapman. The Defendant previously entered pleas of guilty to the following charges:

Count I—Forgery, a felony, in violation of W.S. § 6-3-602(a)(ii)(iii) and (b);

Count VI—*Unauthorized* Use of Personal Identifying Information, a felony, in violation of W.S. § 6.3–901(a) and (c)(ii); and Count IV—Official Misconduct, a misdemeanor, in violation of W.S. § 6–5–107(a)(iii) and § 9–1–802(c).

The State having moved to dismiss the remaining Counts, the Court dismissed the

same. The Court considered the pre-sentence investigation report, statements of victims and arguments of counsel, and finds:

1. The Defendant was competent to enter the above-referenced pleas; there is a factual basis for the same; said pleas were voluntarily and freely given and not the result of force or threats or of promises;

2. The Defendant was represented by competent counsel and was satisfied with the performance of counsel;

3. The Defendant was properly advised as required by Rule 11 of the Wyoming Rules of Criminal Procedure, and having stated that he understood those advisements;

4. The pleas were the product of a plea agreement that was fully disclosed to and accept[ed] by the Court, as required by Rule 11(d) of the Wyoming Rules of Criminal Procedure;

5. The Defendant has paid restitution in this matter as indicated in the Pre Sentence Investigation Report. The Defendant is able to pay an assessment to the crime victims' compensation fund.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED** that the Defendant, Kevin P. Meenan, is guilty of Forgery in violation of W.S. § 6-3-602(a)(ii)(iii) and (b), and is sentenced to serve a period of incarceration of not less than one (1) year nor more than three (3) years to be served at a STATE PENAL INSTITUTION under the direction and supervision of the WYOMING DEPARTMENT OF CORRECTIONS. The Defendant is remanded to the custody of the Sheriff of Natrona County, Wyoming, to be delivered to the custody of the Warden of the Wyoming State Penitentiary.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Defendant, Kevin P. Meenan, is guilty of Official Misconduct in violation of W.S. § 6-5-107(a)(iii) and § 9-1-802(c), and is sentenced to serve a period of incarceration of ninety (90) days in the Natrona County Detention Center. Such sentence shall run concurrently with the sentence imposed for Forgery, above.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that as to the charge of Unauthorized Use of Personal Identifying Information further proceedings are suspended under the provisions of W.S. § 7-13-301. The Defendant is placed on probation as provided in W.S. § 7-13-301 on the terms and conditions set out below.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the sentences of Forgery and Official Misconduct are suspended and the Defendant is placed on supervised probation administered by the Wyoming Department of Corrections, Division of Field Services, Probation and Parole, under the following terms and conditions:

1. The term of probation shall be two (2) years for Forgery and Unauthorized Use of Personal Identifying Information, and six (6) months for Official Misconduct.

2. The Defendant shall immediately contact Probation and Parole and enter into a probation agreement.

3. The Defendant shall comply with all regulations and rules of the Wyoming Department of Corrections, Division of Field Services, Probation and Parole, and with all requirements of his probation officer.

4. The Defendant shall not violate any locale [sic], state or federal laws.

5. The Defendant shall not use or possess controlled substances.

6. The Defendant shall pay all assessments; fees and costs on a payment scheduled approved by his probation officer.

7. The Defendant, at the request of any law enforcement officer or probation officer, shall provide a blood, breath or urine sample to determine the presence of alcohol or drugs.

8. The Defendant shall perform two hundred (200) hours of community service as directed by his probation officer.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that should the Defendant violate any of the terms and con-

ditions of probation he shall be returned to the Court for revocation of probation and imposition of the suspended sentence.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Defendant pay an assessment of $300.00 to the Crime Victim's Compensation Fund, and a Court Automation Fee of $30.00 (total = $330.00).

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Defendant immediately submit to DNA sampling and booking/fingerprinting.

DATED February 23, 2004.

/s/ Keith G. Kautz
KEITH G. KAUTZ
District Judge